The opinion of the court was delivered by
Nicholls, C. J.
The plaintiff filed a petition in the Civil District Court in which it alleged that it) was incorporated on the 31st day of March, in the year 1879, by act of that date before John Bendernagel, *1832 Notary Public, under the name and style aforesaid, for the purpose of constructing, maintaining and operating a railroad from Oanal street, in the city of New Orleans, to Lake Pontchartrain, and along the lake shore, as provided in an ordinance of the city of New Orleans, No. 2264, Administration Series, and. the amendments which had been made thereto, or might thereafter be made thereto, granting the right to construct and operate said road.
That said original ordinance No. 2264, Administration Series was adopted on the 6th day of August, 1873, and granted to the Oanal Street, City Park and Lake Railroad Company, the right to lay a double track railroad, with certain privileges, over the route therein mentioned, from Canal street, at the intersection of Basin street, to the Spanish Fort. That this ordinance was subsequently amended by Ordinance No. 2548 Administration Series, Ordinance No. 2679 Administration Series and Ordinance No. 3146 Administration Series, all of which Ordinances were annexed and made part of the petition, for reference and proof.
That on the 2nd day of May, 1878, the City of New Orleans adopted Ordinance No. 4523, Administration Series, entitled an Ordinance granting the right for a Railroad, from the neutral ground on Basin street, at the junction of Canal street, etc., a copy of which ordinance was annexed and made part of the petition granting a right of way to the Canal Street City Park and Railroad Company, for twenty five years from that date to lay a single or double track, passenger and freight railroad through the following- streets; to-wit:
Commencing at the neutral ground on Basin street, Second District, at its intersection with Oanal street, thence along said neutral ground to Bienville street, thence in and along Bienville street to St. Patrick street, thence in and along St. Patrick street to the west bank of the Orleans Canal; thence along Orleans- street on the west side of the Canal to May street, near the lake shore; thence on May street to Genois street, thence on Genois street to the Bayou St. John, returning in the same street to the west bank of the Orleans Canal, thence along said bank on the west side of Orleans street, to the intersection with Bernadotte street and Metairie Road, thence along Bernadette street to its intersection with Bienville street; to Claiborne street; thence in neutral ground to Customhouse street; thence in and along Custom *1833 house street to the neutral ground on Basin street, thence to the starting point at Oanal street.
That under and by virtue of the last clause of said Ordinance all ordinances or parts of ordinances in conflict with the foregoing, were repealed.
That the Oanal street, City Park and Lake Railroad Company to which the grant was made under Ordinance No. 2264 Administration Series, modified by Ordinance 2548, 2679 and 3146, Administration Series, was a corporation organized on May, 19th, 1873 by Act before Theodore Buisson, notary public, of which a copy was annexed.
That said Company, subsequently, and before the said Railroad was completed, became a bankrupt, and July 14th, 1877, all of its property, rights and franchises were adjudicated at bankrupt sale to Thomas IT, ITandy, and his associates, which sale was evidenced by a notarial Act to said Handy, passed before Quintero, Notary, on the 26th, day of January, 1878, the credit portion of the purchase price by said Handy for said property being represented by certain mortgage notes mentioned in the said act of sale.
That on the 31st day of January, 1878, by Act before John Bendernagel, Notary Public, the said Handy, and his associates purchasers as aforesaid, organized a new company, known as the Oanal .Street, City Park and Lake Railroad Company, and it was to this Company thus organized, to which the grant of franchise, contained in ordinance No. 4523, Administration Series, was made.
That on August 15th, 1878, by Act, before Bendernagel, Notary Public, a copy of which was annexed, Handy made formal transfer of the property and franchises of the old Company, purchased in his name by himself and associates, to the new Company, and the new Company, as part payment of the price of this transfer, assumed the mortgages contracted by Handy, in the Act of the 31st of January 1878, as aforesaid. That it was this Company which completed the said Railroad, and began the operation of the same, for the carriage of freight, and passengers.
Th.at said mortgages not being paid, the same were foreclosed in suit, No. 9486, of the Fifth District Court, styled, “Mrs. E. Stratton, et al. vs. Thomas H. Handy,” and at the said foreclosure sale, all the property, rights and franchises aforesaid, were sold to M. Schwartz and Brother, on January 28th, 1879.
*1834 . That subsequently on the 31st day of March 1879, the said Schwartz organized the New Orleans, Spanish Fort and Lake Railroad Company and by Act of date April 9th, 1879, said property was sold by M. Schwartz and Brother, to the New Orleans, Spanish Fort and Lake Railroad Company, and ever since the said date, the New Orleans, Spanish Fort and Lake Railroad, had been in possession and in operation of the said .railroad, claiming its right so to operate the same under all the ordinances aforesaid, and particularly under Ordinance No. 4525, Administration Series, and the amendments thereto subsequently adopted.
That the City of New Orleans from the date of the said transfer, to-wit: April 9th, 1879, down to and inclusive of the introduction and passage of Ordinance No. 15,054, Council Series, which was first adopted by the Council on July 26th, 1898, and finally adopted by the Council on February 21st, 1899, fully recognized petitioner as the sole and only owner of all the franchises aforesaid, and particularly the franchise granted under Ordinance, No. 4523 Administration Series. That said recognition was first made under Ordinance No. 5070, Administration Series, adopted by the City of New Orleans on the 21st day of May, 1879, a copy of which ordinance was annexed. That is was specially recognized by Ordinance No. 6275, Administration Series, adopted on December 31st, 1879, a copy of which was annexed. That in this period of nineteen years the officers of the City of New Orleans had compelled petitioner to comply with the provisions contained in Ordinance, No. 4523, Administration Series, and from time to time had issued notices to petitioner to put the streets in repair in accordance with the terms of said Ordinance. That the said City of New Orleans had several times judicially recognized .that petitioner was operating the New Orleans, Spanish Fort and Lake Railroad Company, under the provisions contained in ordinance No. 4523, Administration Series, as would more particularly appear by the mandamus proceedings taken in this Court, in suit No. 44,325, of the docket thereof, styled, “State ex rel. City of New Orleans, vs. the New Orleans, Spanish Fort and Lake Railroad Company;” and also by the proceedings in the case No. 50,242, of the Docket of this Court, styled, “State ex rel. City of New Orleans vs. The New Orleans, Spanish Fort and Lake Railroad Company.
That the present administration of the City of New Orleans now *1835 wrongfully, unjustly and without reasonable or proper cause pretends that the franchise of petitioner to operate the said Railroad as contained in the aforesaid ordinances is not governed by Ordinance No. 4523, Administration Series, which would make the same expire on the 22nd, day of May, 1903, but that the period of its franchises is governed by Ordinance No. 2264, Adopted August, 6th, 1873, and that its franchises have already expired on the 6th day of August, 1898, and acting upon this unlawful assumption the said City Council by the said Ordinance, No. 15,054, Council Series, a copy of which was annexed, had directed a sale for twenty-five years of the franchise of petitioner, with a slight modification of the route, between Claiborne and Basin street, to be made by the Comptroller, and the Comptroller had, as appears by his advertisement, annexed, offered, the said franchise for sale, at public auction, to the highest bidder in the Council chamber, on Thursday, the 22nd day of June, 1899, and would, unless restrained by the injunction of this court, and to the irreparable damage of petitioner, sell the franchises, and thereby cast a cloud upon the title of petitioner and involve petitioner in wasteful and expensive litigation, and destroy the credit of petitioner, and deprive it of the means of improving and maintaining its property in such condition as it ought to be maintained in, in order to make it of convenience to the public and profitable to petitioner.
That the said franchises were well worth to petitioner the sum of One Thousand Dollars ($1000.00) per annum, making the valuation to petitioner, the sum of four thousand dollars ($4,000.00), for the unexpired term thereof.
In view of the premises petitioner prayed that a writ of injunction issue directed to the City and to W. S. Douglass, Comptroller thereof, enjoining, prohibiting, and restraining the said City and the said W. S. Douglass, from executing or attempting to execute Ordinance No. 15,-054, Council Series, or from selling or attempting to sell, the railroad franchises therein directed to be offered for sale, on the 22nd day of June, 1899. Petitioner further prayed that the City of New Orleans through its proper officer, and W. S. Douglas, comptroller, be cited to answer, and after due proceedings had, the said preliminary injunction be made perpetual and that it be adjudged and decreed that the franchises of petitioner are governed by Ordinance No. 4523, Administra *1836 tion Series, and the .amendments thereof, and that the same do not expire until the 22nd day of May, 1903.
Upon the filing of this petition the Court ordered the Defendant to be notified thereof and to show cause why an injunction should not issue as xorayed for and that in the meantime a restraining order issue, until the further order of the Court.
Defendants answered the rule declaring, after pleading the general issue:
1st. — That they admitted that the New Orleans, Spanish Fort and Lake Railroad Oomxoany was incorporated by notarial act before John Bendernagel, late notary public, on the 31st day of March 1879.
2nd. — That they admitted that by Ordinance No. 2264, Administration Series, adopted on the 6th day of August, 1873, the city of New Orleans granted to the Canal Street, City Park and Lake Railroad Company, the right to lay a double track railway with certain privileges, over the route therein mentioned, from Canal street at the intersection of Basin street, to the Spanish Fort, and that said Ordinance was amended by Ordinance No. 2548, Administration Series, Ordinance 2679, A. S. and 3146 A. S.
3rd. — That they admitted that on the 22nd day of May, 1878, the City of New Orleans attempted to adopt an ordinance known as Ordinance No. 4523, Administration Series, purporting to grant a right for a railroad from the intersection of Canal and Basin streets, along the neutral ground on Basin street to Spanish Fort, for twenty-five years from said date.
4th. — -That they admitted that the Canal Street, City Park and Lake Railroad, to which the grant under ordinance No. 2264, Administration Series, amended by Ordinances Nos. 2548, 2679 and 3146, Administration Series, was made, was a corporation organized on 19th May, 1862, by act before Theodore Buisson, Notary Public.
5th. — That they admitted that said Canal Street, City Park and Lake Railroad Company became bankrupt and that on the 14th of July, 1877, all of its property rights and franchises were adjudicated at a bankrupt sale-to Thomas II. Handy and his associates, the credit portion of the purchase price paid by said Handy for said property being represented by certain mortgage notes mentioned in the act of sale.
6th. — -That they admitted that on the 31st of January, 1878, a new Railroad Company was organized under the same name as that or *1837 ganized by notarial act before Theodore Buisson, Notary Public, of May 19th, 1873, to-wit: The Canal Street, City Park and Lake Railroad Company which had been adjudicated bankrupt as aforesaid.
7th. — They admitted that it was to said Company organized on the 31st day of January, 1878, by an Act before John Bendernagel, that the City of New Orleans purported to grant by Ordinance No. 4523 Administration Series the franchise granted to the first Canal Street, City Park and Lake Railroad Company.
8th. — They admitted that on the 15th day of August, 1878, by Act before Bendernagel, Notary Public, said Thos. II. ITandy, transferred to said new Canal Street, City Park and Lake Railroad Company the property and franchises of the Canal Street, City Park and Lake Railroad Company, purchased by him and his associates at the' bankrupt sale aforesaid, and that said new Company assumed the payment of the mortgages contracted by said ITandy as part payment of his purchase at the bankrupt sale, said mortgages being detailed in the Notarial Act of 31st January, 1878.
9th. — They admitted that said mortgages contracted by ITandy and asssumed by the new Canal Street, City Park and Lake Railroad Company not being paid, the same were foreclosed, and at the sale made by the Sheriff were sold to M. Schwartz and Brother, on January, 28th, 1879.
10th. — They admitted that on the 31st day of March, 1879, said M. Schwartz & Brother, sold the property acquired by them at the Sheriff’s sale, as aforesaid, to the New Orleans, Spanish Fort and Lake Railroad Company.
They averred that the only franchise ever acquired by the New Orleans, Spanish Fort and Lake Railroad Company was the franchise granted to the first Canal Street, City Park and Lake .Railroad Company, by Ordinance No. 2264, Administration Series, amended by Ordinances Nos. 2548, 2679 and 3146, Administration Series, to-wit: A franchise to operate the railroad described in said ordinance, for twenty-five years from the 6th of August, 1873, being the same franchise upon which the mortgages assumed by said Thomas IT. ITandy, at the bankrupt sale of the property and franchises of the first Canal Street, City Park and Lake Railroad Company, made to said Handy on 14th July, 1877, and evidenced by Notarial Act, before Quintero, Notary, on the 26 of January, 1878, rested; being the same franchise *1838 which was purchased by M. Schwartz & Brother, on January 28th, 1879, at Sheriff’s sale, made to them, and being the same franchise which was sold by M. Schwartz & Brother to the New Orleans, Spanish Port and Lake Railroad Company, by act under date of April 9th, 1879.
They averred that said Ordinance No. 4523, was absolutely null and void, ab initio it being attempted to convey, in substance and effect, the same franchise granted by Ordinance No. 2264, A. S.
They averred that said Ordinance No. 4523 had been declared null and void at the instance of the New Orleans, Spanish Fort and Lake Railroad Company, by a final judgment of the Supreme Court of the United States in the case of the New Orleans, Spanish Fort and Lake Railroad Company vs. Delamore et als., 114 Sup. Ct. Reps., page 50, and that said judgment constitutes res judicata and estoppel against the said New Orleans, Spanish Fort and Lake Railroad Company.
They denied that the City of New Orleans, from April 9th 1879, down to the present time, recognized the New Orleans, Spanish Fort and Lake Railroad Company, as the owner of any franchise under Ordinance No. 4523, Administration Series by Ordinances No. 6070 and 6275 Administration Series but averred the truth to be that the City of New Orleans had only recognized the New Orleans, Spanish Fort and Lake Railroad Company to be the owner of the franchises granted to the first Canal Street, City Park and Lake Railroad Company.
They denied that the New Orleans, Spanish Fort and Lake Railroad Company had or could acquire any franchise by estoppel, or that any allegation in the petitions in the suits No. 44,325, entitled State ex rel. City of New Orleans vs. New Orleans, Spanish Fort and Lake Railroad Campany, and No. 50,242, State ex rel. City of New Orleans vs. New Orleans, Spanish Fort and Lake Railroad Company to the effect that said railroad company was operating under the provisions of Ordinance No. 4523 Administration Series, constituted estopped against the City of New Orleans, said City having made a judicial admission that said Railroad Company was operating under said ordinance, or gave legality or validity to said Ordinance No. 4523 Administration Series, which was and is absolutely null and void ab initio.
They averred that the New 'Orleans, Spanish Fort and Lake Railroad Company, was without cause of action herein, or entitled to the writ of Injuncton, the only franchise which they had right or title to, to-wit: *1839 The franchise granted by Ordinance No. 2264 Administration Series having expired on the 6th day of August, 1898, and Defendants averred that the City of New Orleans had full legal right to advertise and sell according to law, a franchise for an electric railway, provided for by Ordinance No. 15,054, C. S., from the intersection of Oanal and Basin streets to Lake Pontehartrain.
They therefore prayed the restraining order issued to be set aside, that the writ of injunction pendente lite prayed for be denied and that Plaintiff’s suit be dismissed at its costs. After hearing the District Court- rendered judgment dissolving the restraining order it had granted; that the rule nisi be discharged; that Plaintiff’s prayer for an Injunction be refused and dismissed.
The plaintiffs appealed suspensively from the judgment.
Opinion.
The judgment appealed from is as follows:
“Upon a careful examination of the plaintiff’s petition, and the exhibits filed therewith, and after hearing the City of New Orleans through her counsel, and also after hearing counsel for petitioner, my opinion is that the only franchise ever acquired by the plaintiff is that derived from the city ordinance No. 2264, of August 5th, 1873, and that said franchise expired by limitation August 6th, 1898, and, therefore, that petitioner is without legal right to oppose the sale advertised by the city under ordinance No. 15,054, C. S.
It is, therefore, ordered that- the restraining order of May 31st, 1899, be dissolved; the rule nisi be discharged; that the plaintiff’s prayer for an injunction be refused and dismissed at plaintiff’s costs.”
The appeal before us does not’involve a determination of the issues raised between the parties by their pleadings as to whether or not the plaintiff company, under the proceedings by which it acquired its rights, acquired the franchise which was granted to the second Oanal, City Park and Lake Railroad Company, for twenty-five years from the 22nd of May, 1878, under ordinance No. 4523. That question will be' reached and passed upon on a trial of the merits of the cause. The only matter before us now is whether the District Court erred in refusing to allow the plaintiff to hold matters in abeyance by an injunction until final judgment has been rendered.
The judicial sale made in the matter of “Mrs. E. Stratton et al. vs. *1840 Thomas H. Handy,” at which M. Schwartz & Bro. (plaintiff’s assignors) became the adjudicatee of the property thereat sold, was .not under a writ of fi. fa. issued upon a judgment which the plaintiffs in that suit had obtained against the defendant, but under a writ of seizure and sale issued in executory process in foreclosure of a mortgage which Handy had granted upon certain specified property.
The record shows that on the 14th of July, 1877, at a bankrupt sale made in the matter of the bankruptcy of the first Canal Street, City Park and Lake Railroad Company, Thomts II. Handy became the adjudicatee of the property and franchises of the bankrupt company.
In the act of sale to the purchaser, passed before Quintero, notary public, on the 26th January, 1878, the franchises purchased are minutely described and declared to be those conveyed to the company by the City of New Orleans under ordinance 2264, adopted on the 5th of August, 1873, amended by ordinance No. 2548, adopted March 24th, 1874. • The terms of sale were partly cash and partly credit. Handy secured the credit portion by special mortgage and vendor’s privilege on the property purchased.
The purchase was made evidently in contemplation of the formation of a new company, and in fact a new corporation was formed on the 21st January, 1878, by act before Bcndernagel, notary pmblie, with the same name as the former one. The charter declared that it should exist for twenty-five years, and the object of its creation was recited to be to construct and operate a railroad from Canal street to Lake Pontehartrain, thence along the lake shore, as provided in an ordinance of the City of New Orleans, No. 2264, O. S., “and the amendments which have been made thereto, or may hereafter be made, granting the right to construct and operate said railroad.”
On the 15th of August, 1878, Handy made a sale to this company of the property which he had acquired at the bankrupt sale, the description of the franchise sold being identical with that by which he had acquired. In this act, the purchaser, the second Canal Street, City Park and Lake Railroad Company, assumed and bound itself to carry out all the stipulations and agreements made by ITandy in the act before Quintero, notary public, on the 26th January, 1878.
On the 22nd of May, 1878, the City Council, by ordinance No. 4523, entitled “an ordinance granting the right for a railroad from the neutral ground on Basin street, at the junction with Canal street, in the *1841 Second District of New Orleans, to Lake Pontehartrain, with privilege of extending same along said lake shore,” granted to this new corporationj for the period of twenty-five years from that date, the right of way to lay a single or double track, passenger and freight railroad, as mentioned in the title of the ordinance.
By the 7th section of said ordinance it was provided that, at the expiration of the right of way, the road, rolling stock, equipments, depot sand fixtures, might be taken at an appraised value, to be ascertained in the manner provided for in the ordinance.
Before the expiration of this last franchise, the mortgage granted by Handy was foreclosed and the property covered by the mortgage was sold to Schwartz & Bro., who, later, transferred the same to the present plaintiff.
We do not understand the plaintiff to assert that, in the proceedings in foreclosure, there was any mention made either in the seizure or in the adjudication made under it to M. Schwartz &' Bro, or that there was any reference to the franchise made by the city on the 22nd May, 1878, to the second Oanal Street, City Park and Lake Railroad Company, or that that franchise was conveyed to Schwartz & Bro., in terms.
Their position is that the company holding that franchise at that time, the original franchise and the late one, became merged, and the foreclosure of the original one carried with it, as a consequence, or as an incident, the second franchise.
It is this claim which the District Court has held unfounded when considering it, for the purpose of guiding its conduct as to the granting of the injunction asked by the plaintiff.
We do not think it necessary, at this moment, to enter into any examination or discussion as to what the effect of the ouster of the second Oanal Street, City Park and Lake Railroad Company, from the original franchises by the foreclosure proceedings, may 'have had upon the franchise of the 22nd May, 1878, as between the city and the second company, whether the sale extinguished, at once, the later franchise, or whether the company would be entitled to resume the franchise at the termination of the original one, and hold it for five years, nor need we discuss whether Schwartz & Bro., in becoming the adjudicatee at the foreclosure sale, became bound by the stipulations in the second franchise; that the road, rolling stock, etc., should revert to the city, at its option, on the termination of the new franchise, or become bound by *1842 their purchase ipso facto to carry out all other stipulations which the parties might have thought proper to have inserted in this second franchise, or whether they could have repudiated and disclaimed, had they thought proper, being bound, beyond the terms of the original franchise.
What we are now concerned in is whether, in view of the situation shown, the plaintiff has the legal right to have the city stayed in its action until after the rights of parties should be determined by final judgment.
The plaintiffs say they will b!e very much injured by permitting matters to proceed to a sale; but what about the city’s interests in this matter ? We are bound to consider the situation of both parties. The plaintiffs have already enjoyed for two years, and will continue to enjoy for an indefinite period (for plaintiffs could discontinue their suit), privileges which they are not entitled to, if the position of the city be correct, and this possibly without being bound by the stipulations of the new franchise.
The granting of the injunction would still leave the suit to which this injunction would be merely ancillary, still pending with plaintiffs’ rights called in question and as much clouded as they would be without the injunction.
The plaintiffs say they are in full possession of the road, the rolling stock, and the franchises. The sale of the property of another person is null. A sale by the city, of franchises which really belongs to plaintiffs, would convey no title.
The adjudieatee would have to bring suit to have his rights tested, and in such suit plaintiffs would have full opportunity to defend themselves and pending the same would remain in possession.
If the right to the franchise is not in the plaintiff, but is a valuable right which the city authorities could make available for the benefit of the corporation and its citizens, it is its right and its duty to exercise the same, and it should not be stayed by an injunction, in limine, in its efforts to do so. We see no imminent immediate danger and injury to the plaintiff, as urged against which could not be urged with greater force a counter claim by the city.
In Seymour vs. Bourgeat, 12 La., 123, the plaintiff obtained an injunction to stay the sale of a tract of which'he averred himself to be the owner and in possession, advertised by the court of probates as part of the estate of Bourgeat, whose heirs being made parties prayed for the *1843 dissolution of the injunction, which was ordered. The district judge was of opinion that “a parly in possession had no right to enjoin proceedings by which his rights can not be affected; being in possession of the property, the advertising or even selling it by the court of probate could not divest him of his possession, nor disturb his title; that should a sale be effected and the purchaser attempt to exercise rights of ownership or possession, it would be then time enough to invoke the aid of the court. This sale might never be made, nor any eviction nor disturbance experienced.”
The Supreme Court on appeal affirmed this judgment.
In Morrison vs. Lamkin, 26 Ann., 700, the court said:
“If the defendant (the tax collector) has no authority to sell the lands forfeited to the State, no title will pass to the purchaser; there will be no change of ownership and plaintiff can not be injured.”
We can not say that the action of the court was erroneous, and it is hereby affirmed.
Blanchard, J., concurs in the decree.